PATRICK KANA

v.

EDWARD BOLTON et ux.

1. A strip of land, running over and along the defendant's lot, had been used, without dispute, for forty years as an alley, and was the only means of access to complainant's lot from the public street of a city. In building an addition to his house in 1871, the defendant built over the alley, leaving suffi- cient space for its ordinary use, and also put a side door in the addition, opening into that part of the alley which he built over.—*Held,* that defendant had no right to close the alley so as to cut off the use of it by complainant, and that complainant's easement was not affected by a proposition to the de- fendant and his grantor, in 1865, to buy the right of way through the alley; and *held further,* that complainant was entitled to relief irrespective of the act to quiet titles. *Rev. p. 1189.*

2. The complainant sought by the bill to quiet his title to a lot of land, but raised no question of location in the bill. The defendant neither disclaimed nor otherwise noticed the matter by allegation in his answer or proof, but questioned the location.—*Held,* that the complainant's title to the lot must be established, leaving the question of location undecided.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. M. Force* and *Mr. W. B. Gourley,* for complainant.

*Mr. S. Tuttle,* for defendants.

THE CHANCELLOR.

This is a bill for an injunction and to quiet title. In the lat- ter aspect it is filed under the act " to compel the determination

of claims to real estate in certain cases, and to quiet the title to the same." *Rev. p. 1189.* The object of the injunction is to restrain the defendants from preventing the use by the complainant of an alley-way leading from his lot, in Paterson, over the lot of the defendant, Edward Bolton, to Hamburgh avenue. The complainant's lot lies directly in the rear of Bolton's, which abuts upon it; and the alley, which is three feet wide by about eighty feet in length, is at the side of Bolton's lot, and is the only means of ingress and egress to and from the complainant's lot to the street. On the latter lot is a dwelling-house, which appears to have been built about forty years ago. The complainant lives in it with his family. The bill seeks to quiet the title of the complainant to the alley-way, which Bolton completely shut up just before the beginning of the suit, and also to a part of the complainant's lot, the title to which, according to the bill, is disputed by Bolton, who claims to own it. As to this latter matter, it appears that the defendants do not dispute the complainant's title to his lot as described in the bill, but there is a dispute between them as to the location thereof. This question of location is not raised by the pleadings, and does not affect the question of right to the alley-way.

As to the alley, it appears clearly that it has been used as a way from the complainant's lot to Hamburgh avenue from the time when the house on the complainant's lot was built, which, as before stated, was about forty years ago. There is no dispute on this point. It also appears that the right of the owners of the complainant's lot to the use of the alley was never disputed until a few days before the filing of the bill, which was in April, 1881. The complainant's lot was bought by his father, part of it in 1843, and the rest in 1849. His father died seized of the property in fee in 1853. His widow, the complainant's mother, died in 1878, and in 1879 the complainant, to whom and his sisters the property descended, became the owner of the entire property. Bolton's property was conveyed to him in 1865, by Alexander Davidson, who bought it a few days previously. In 1871 Bolton built an addition to his house. The addition was built over the alley, leaving a

Kana *v.* Bolton.

clear space of about six feet high under it, which, after that time, was used as part of the alley. A side door of Bolton's house opens on the alley. Bolton appears to have been actuated by hostility to the complainant (with whom he was at enmity at the time) in closing the alley. He closed it at the inner entrance of the alley under the addition. The complainant and those under whom he holds have used the alley for about forty years as the means of ingress and egress to and from his property to the street, and they have had no other. There has been and is no other. Their enjoyment of it appears never to have been interrupted or obstructed until April, 1881, when it was interrupted by Bolton, as before mentioned. Such a user creates a presumption of right. *Lehigh Valley R. R. Co.* v. *McFarlan, 14 Vr. 605 ; Washb. on Ease.* §§ *70, 71.*

It is urged, however, on the part of the defendants, that the complainant is estopped from claiming this right, because in 1865, after Davidson bought the Bolton property, he offered to pay Davidson $100 for the privilege of the alley, and Bolton testifies that before and about the time he got his deed for his lot (he says he first saw the complainant the night before he bought the property) the complainant asked him to sell him the right of way for his mother, and that he refused, saying that he would not shut up the alley so long as the complainant's mother lived, should he own the property so long. He says, it may be added, that he did not know of the offer to Davidson. In all this, however, there is no evidence of anything except an effort on the part of the complainant (who then owned only an equal undivided one-fourth interest in his lot) to assure by grant, by deed, the title to the right of way. Neither he nor those under whom he claims appear to have disclaimed the right at any time, or admitted that they had no right to it, and the answer does not allege that he or they ever did so. Moreover, they or he were constantly in the use of it. It was an apparent and continuous easement, of which Bolton had notice when he bought his property. When Bolton bought his property, his mother-in-law lived on it. Davidson, though he owned the Bolton lot only four days, was acquainted with the premises and knew of the existence of the alley-way.

He says he has known it for about forty years. He also says, it may be remarked, that the offers made to him by the complainant were made during the three or four days that he owned the Bolton lot, and therefore after he, Davidson, had become the owner of that lot. He testifies that the alley-way existed thirty-seven or thirty-eight years ago, and was " the proper course into the yard." When Bolton built the addition to his house in 1871, he recognized the claim of the owners of the complainant's lot to the right of way by so building as not to interfere with the enjoyment of the right. The complainant is entitled to relief at the hands of this court, in respect to the alley, and that, too, irrespective of the act to quiet title before referred to. *Shivers* v. *Shivers, 5 Stew. Eq. 578, 8 Stew. Eq. 562.* The complainant's right is commensurate with and measured by the use. *Ibid.* His claim appears to be to an unobstructed right of way to and from his lot, over a strip of three feet wide along the whole line of Bolton's lot, at the easterly side thereof. He has established such right and there will be a decree accordingly, and a perpetual injunction, with costs.

There will also be a decree establishing his title to his lot by and according to the description set forth in the bill. The defendants not only have not disclaimed, but they have neither taken any notice of nor made any reference to that matter in the answer, and they have not attempted, by proof, to deny such right on his part, though, as before stated, they do dispute the location, but that question, as previously remarked, is not presented by the pleadings.